UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| CHERYL ANDERSON, | § | |
| --- | --- | --- |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:16-CV-0853-BK |
| NANCY BERRYHILL,<br>Acting Commissioner of Social<br>Security, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The parties have consented to proceed before the magistrate judge. Doc. 18. Now before the Court are the parties' cross motions for summary judgment. Doc. 28; Doc. 30. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **DENIED**, Defendant's *Motion for Summary Judgment* is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for supplemental security income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for benefits in August 2012, claiming that she became disabled in February 2010.[1] Doc. 16-6 at 2-8. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 16-3 at 13, 24-44.

---

[1] Although Plaintiff states that she became disabled in 2006, the earliest month for which she may receive SSI payments is the month after she filed her application. 20 C.F.R. § 416.335; *Brown v. Apfel,* 192 F.3d 492, 495 n.1 (5th Cir. 1999) (noting that a claimant cannot receive benefits for any month prior to the one in which she applied for SSI).

**B. Factual Background**

Plaintiff was 49 years old when she filed her application for SSI benefits. Doc. 16-3 at 42. She had completed the tenth grade and had past relevant employment as a forklift driver, caregiver, custodian, and warehouse worker. Doc. 16-7 at 21.

As for her relevant medical history, Plaintiff went to the emergency room in October 2012 due to pain in her thoracic and lumbar spine, which she described as "burning," and bilateral shoulder and neck pain. Doc. 16-8 at 143. Upon examination, Plaintiff had bilateral muscle spasms from her upper lumbar spine to her lower thoracic spine, a moderately limited range of motion, and decreased flexion, extension, and bilateral bending ability. Doc. 16-8 at 144. Upon discharge, Plaintiff was issued a prescription for pain medicine and instructed to limit her lifting and not perform any strenuous activity. Doc. 16-8 at 145.

In November 2012, Dr. Mehrzad Zarghouni, M.D., conducted a consultative examination during which Plaintiff complained of back pain and arthritis along her entire spine. Doc. 16-8 at 146. She exhibited a slow, antalgic gait, and her bilateral hip flexion, extension, adduction, and abduction were reduced to four out of five. Doc. 16-8 at 148. Plaintiff also had decreased hand strength bilaterally, and a sensory examination revealed paresthesia in her cervical spine and in both hands. Doc. 16-8 at 149. Plaintiff exhibited tenderness in her right upper back and hip, she could not squat and rise, walk on her heels or toes, or hop on either foot. Doc. 16-8 at 149. Plaintiff's lumbar spine x-rays revealed disc space height loss, discogenic sclerosis, osteophyte formation, and minimal hip osteoarthritis. Doc. 16-8 at 150.

Dr. Zarghouni opined that Plaintiff had "mild to moderate limitations with standing and walking due to lumbar radiculopathy," but could sit normally in an eight-hour workday with normal breaks. Doc. 16-8 at 150. He concluded that Plaintiff had moderate limitations with

lifting and carrying weight. Doc. 16-8 at 150. Dr. Zarghouni also found that Plaintiff could only occasionally bend, stoop, crouch or squat and found that she had manipulative limitations in reaching, handling, feeling, grasping, and fingering, which she could perform only occasionally due to paresthesia and weakness in her hands. Doc. 16-8 at 150.

### C. Administrative Hearing

At Plaintiff's administrative hearing, Dr. Charles Murphy, M.D., testified, in relevant part, that given the medical evidence of record, Plaintiff could (1) lift 20 pounds occasionally and ten pounds frequently; (2) stand/walk for four hours in an eight-hour workday in 45-minute intervals; and (3) sit for six hours in an eight-hour workday in two-hour intervals. Doc. 16-3 at 80. Dr. Murphy did not find that Plaintiff had any manipulative limitations, but opined that she could not climb ladders, ropes or scaffolds or crawl, but could perform other postural activities occasionally. Doc. 16-3 at 80-81. A vocational expert ("VE") testified that, given Plaintiff's limitations as stated by Dr. Murphy, she would be able to perform modified light, unskilled jobs that existed in the state and national economies. Doc. 16-3 at 86-92.

### D. The ALJ's Findings

In September 2014, the ALJ denied Plaintiff's application for benefits, finding that she had the residual functional capacity ("RFC") for modified light work in that she could: (1) lift/carry 20 pounds occasionally and ten pounds frequently; (2) sit for six hours in an eight-hour workday; and (3) stand/walk for no more than four hours in an eight-hour work day. Doc. 16-3 at 37. Plaintiff could not, however, crawl or climb ladders, ropes, or scaffolds. Doc. 16-3 at 37.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

4

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## III.  ARGUMENT AND ANALYSIS[2]

### A.  Physicians' Opinions

Plaintiff first argues that the ALJ's RFC finding was tainted by his failure to properly weigh the physicians' opinions in accordance with 20 C.F.R. § 416.927, thereby resulting in an erroneous RFC finding.  Doc. 29 at 4-5.

*1.  Dr. Murphy*

With regard to Dr. Murphy, Plaintiff contends that the ALJ erred in not incorporating into his written RFC assessment Dr. Murphy's limitation that Plaintiff could sit for only two hours at a time and stand/walk for only 45-minute intervals.  Doc. 29 at 8.  Nevertheless, as Plaintiff

---

[2] The parties should note that in considering their summary judgment arguments, the Court has relied upon the parties' assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

Additionally, to aid in the efficient resolution of social security appeals, the Court requests that, in the future, counsel for both parties cite the ECF document and page numbers, rather than the transcript page numbers, when citing to the administrative record in their briefs.  All citations to cases and the records also must be contained in the body of the document rather than in footnotes.

correctly observes, the ALJ did utilize those limitations in his hypothetical to the VE, who included them in her assessment of the types of jobs that Plaintiff could do. *See* Doc. 16-3 at 86-92. While acknowledging that such error might at first appear to be harmless, Plaintiff points out that the VE determined that the ALJ's four-hour standing/walking limitation would erode the light, unskilled occupational base by 70 percent, and that the further limitation to only occasional public contact (as also found by the ALJ) would result in an additional five percent erosion. But Plaintiff argues that the ALJ did not ask the VE how much *additional* erosion would result if Plaintiff was limited to sitting for two-hour maximum intervals. Doc. 29 at 9-10. The Court disagrees. The VE specified that her erosion factor encompassed *all* of the limitations imposed by Dr. Murphy, which explicitly included the two-hour sitting limitation. Doc. 16-3 at 89.[3]

### 2. *Dr. Zarghouni*

With respect to Dr. Zarghouni, Plaintiff contends that while the ALJ found the doctor's medical source statement to be inconsistent with the record, there was little other record evidence based on personal examination, and the ALJ also did not consider Plaintiff's treating relationship with hospital physicians. Doc. 29 at 8-9. Thus, the ALJ, in effect, rejected the opinion of every physician of record. Doc. 29 at 9. Plaintiff concludes that the ALJ should have given Dr. Zarghouni's opinion controlling weight and thereby recognized that Plaintiff had manipulative limitations due to bilateral hand weakness and paresthesia that would prevent her from performing the jobs identified by the ALJ. Doc. 29 at 10-11.

---

[3] Plaintiff also asserts that the ALJ neglected to incorporate into his hypothetical question Dr. Murphy's finding that Plaintiff would be limited to sitting for no more than 45 minutes at a time. Doc. 29 at 9-10. However, Dr. Murphy imposed no such limitation. *See* Doc. 16-3 at 80.

6

Defendant responds that the ALJ properly evaluated the medical evidence of record and discounted Dr. Zarghouni's opinion because the manipulative and postural limitations he imposed were not supported by the evidence of record. Doc. 30 at 5. Rather, Defendant asserts, Dr. Murphy's opinion about Plaintiff's RFC was consistent with the medical records, which indicated that her physical examinations were largely normal, there were no noted neurological deficits in her hospital records, and her motor strength and sensation had been fully intact during those visits. Doc. 30 at 5-6.

In this case, the only "treating" physicians that Plaintiff arguably could point to would be the doctors at the emergency room she visited on occasion. *See* 20 C.F.R. § 416.927(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Those doctors only specifically examined Plaintiff once for back pain during the relevant time period, and did not impose any restrictions on Plaintiff except to limit her lifting and performance of any strenuous activity. Doc. 16-8 at 145. The ALJ clearly did not give the hospital physicians' opinion controlling weight and, thus, he had to consider the factors listed in section 416.927(c)(1), (3)-(6) in weighing the remaining medical opinions. *See* 20 C.F.R. § 416.927(c) (describing how the Commissioner will evaluate medical evidence if it does not give a treating source's medical opinion controlling weight).

First, the Commissioner generally must give more weight to the medical opinion of a source who has examined a claimant – in this case Dr. Zarghouni – than to the opinion of a non-examining physician such as Dr. Murphy and the state reviewing physicians. 20 C.F.R. § 416.927(c)(1). Second, the more a medical source presents relevant evidence such as medical signs and laboratory findings to support his medical opinion, the more weight the Commissioner

7

must give that medical opinion. 20 C.F.R. § 416.927(c)(3). Last, the Commissioner, must consider the consistency of the medical opinion with the record as a whole, the specialty, if any, of the physician, and any other factors which tend to support or contradict the physician's opinion. 20 C.F.R. § 416.927(c)(4-6).

In this case, the ALJ gave "little weight" to Dr. Zarghouni's findings, noting that his opinion was "vague" and unsupported by the clinical record. Doc. 16-3 at 41. The ALJ noted that Dr. Zarghouni's sitting, standing, and walking limitations were consistent with Plaintiff's RFC and the medical records, but his manipulative and postural limitations were not, given that Plaintiff had no noted muscle weakness, sensory loss, or neurological deficits in her records. Doc. 16-3 at 41. The Court does not necessarily agree with the ALJ that Dr. Zarghouni's opinion was vague and unsupported by the medical evidence. The doctor performed a detailed physical examination of Plaintiff as described above. Based on his findings, Dr. Zarghouni imposed manipulative limitations as well as other limits on Plaintiff's ability to carry out work-related functions. Doc. 16-8 at 150.

As far as the ALJ's opinion that the doctor's manipulative limitations were unsupported, however, a review of the record reveals no other evidence that would support such limitations. Plaintiff's emergency room hospital records were cursory at best and make no mention of any difficulty she had using her hands. *See* Doc. 16-8 at 2-13; Doc. 16-8 at 143-45; Doc. 16-9 at 21-24. The ALJ gave "great weight" to Dr. Murphy's opinion, finding that it was consistent with the evidence of record, which indicated that Plaintiff could perform light work and stand/walk for four hours in a work day, as long as she avoided certain types of exertion. Doc. 16-3 at 40-41. But Dr. Murphy testified that he found no reason to impose manipulative limitations even though he recognized Dr. Zarghouni's opinion to the contrary, stating that he did not find "any

8

specific medically determinable impairment that would reasonably cause weakness or numbness of the hands." Doc. 16-3 at 80.

Looking at the record as a whole, substantial evidence supports the ALJ's RFC assessment and decision to discount Dr. Zarghouni's opinion that Plaintiff had manipulative limitations. The Court simply is not permitted to reweigh the evidence and substitute its own judgment for that of the ALJ even if it might have reached a different result. *Greenspan*, 38 F.3d at 236. The fact is that the record is sparse, and only one doctor believed it necessary to impose manipulative limitations on Plaintiff. Under these circumstances, the Court cannot find reversible error. *Leggett*, 67 F.3d at 564.

### B. Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ failed to properly evaluate her subjective complaints in compliance with SSR 16-3p, which has superseded SSR 96-7p, and now no longer permits ALJs to make "credibility" assessments. Doc. 29 at 11-15. Defendant responds that SSR 16-3p became effective upon publication − after the ALJ rendered his decision in this case − and is not retroactively applicable. Doc. 30 at 8-9. Even if the new rule does apply, however, Defendant asserts that the ALJ permissibly weighed the necessary factors in determining that the record did not support Plaintiff's subjective complaints. Doc. 30 at 9-11.

Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy," stating "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). When the ALJ issued his decision in this case, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." SSR 96-7P, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). At least one judge of this Court has found that SSR 16-3p does not apply

retroactively. *Norris v. Berryhill*, No. 15-CV-3634-BH, 2017 WL 1078524, at *11 n.10 (Mar. 22, 2017) (Ramirez, J); *cf. Howard v. Berryhill*, No. 16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) (Horan, J.) (declining to determine whether SSR 16-3p applies retroactively because the court would reach the same result in either event).

Even assuming that SSR 16-3p does apply retroactively, the outcome would not differ in this case. SSR 16-3p provides that, in evaluating a claimant's symptoms, an ALJ:

> will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

SSR 16-3p, 2016 1119029 at *10.

In the instant case, the ALJ did not impugn Plaintiff's character or even imply that she was untruthful. Rather, the ALJ simply considered her complaints of pain in relation to her stated ability to perform various tasks (including making herself simple meals, washing and ironing clothes, shopping, handling money, and going to church), and the medications she took (which the record indicated had been effective) and weighed those factors against the objective medical evidence, which the ALJ discussed at great length. Doc. 16-3 at 39-40. In sum, the ALJ found that even if Plaintiff's complaints were "sincere," they were simply "outside the range of reasonable attribution according to the medical opinions of record." Doc. 16-3 at 39. SSR 16-3p requires the ALJ to consider a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, which the ALJ must then juxtapose against the objective medical and other evidence of record. That is what the ALJ did in this case. There is no basis for reversal.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 28, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 30, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on August 18, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE